UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BRANDON WATSON GENTRY**                          **CIVIL ACTION**

**VERSUS**                                         **No. 17-3995**

**BP EXPLORATION & PRODUCTION, INC. ET AL**        **SECTION I**

## ORDER

Before the Court is a motion[1] by plaintiff Brandon Watson Gentry ("Gentry") for extension of deadlines seeking to delay the Court's ruling on any dispositive motions and continue all scheduling deadlines until plaintiff's counsel concludes B3 docket-wide discovery on the alleged failure by defendants, BP Exploration & Production, Inc.; BP America Production Company; and BP p.l.c. (collectively, "BP"), to conduct dermal monitoring and biomonitoring of oil-spill workers. Also before the court is BP's opposition to the motion.[2] For the following reasons, the Court denies Gentry's motion.

### I.   BACKGROUND

This is a "B3" case arising out of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico.[3] B3 cases involve "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g.,

---

[1] R. Doc. No. 60.
[2] R. Doc. No. 61. Halliburton Energy Services, Inc., Transocean Holdings, LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc. also joined in BP's opposition.
[3] R. Doc. No. 6 ("Severing 780 Cases in the B3 Pleading Bundle and Re-allotting Them Among the District Judges of the Eastern District of Louisiana") (Barbier, J.).

dispersant)." *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *9 (E.D. La. Apr. 1, 2021) (Barbier, J.). In the course of the MDL proceedings, Judge Barbier approved the Deepwater Horizon Medical Benefits Class Action Settlement Agreement, which included a Back-End Litigation Option ("BELO") permitting certain class members to sue the defendants for later-manifested physical conditions. *Id*. at *2. The B3 plaintiffs, by contrast, either opted out of the class action settlement agreement or were excluded from its class definition. *Id*. at *10 n.3. To prevail on their claims, the "B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response." *Id*. at *11.

Gentry was employed in the response to the Deepwater Horizon ("DWH") oil spill.[4] He alleges that exposure to crude oil and chemical dispersants caused him to develop a multitude of adverse medical conditions, including "dizziness, nausea, headaches, sinus problems, eye irritation, rashes, skin lesions and various pulmonary issues."[5]

B3 plaintiffs like Gentry have sought to support their claims that exposure to oil and dispersants caused health problems by introducing medical causation analysis by Dr. Jerald Cook. BP has responded with motions *in limine* arguing that Cook's testimony is scientifically unreliable and therefore inadmissible under *Daubert v.*

---

[4] R. Doc. No. 1-1, at 2.
[5] *Id*. at 8.

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[6] BP has not filed a motion to exclude Dr. Cook's testimony in this case.

## II.   LAW & ANALYSIS

Gentry argues that the Court should continue all scheduling deadlines to "allow factual discovery aimed at individual plaintiffs to be put on hold while discovery proceeds on what has become the defining legal issue—general causation and the acceptance of Plaintiff's causation expert," Dr. Cook.[7] He also requests that submission deadlines for motions for summary judgment and motions *in limine* be continued to "allow time for the discovery disputes to be resolved, and discovery relating to BP and biomonitoring to be completed"[8] in *Torres-Lugo v. BP Exploration & Production, Inc.*, No. 20-210 (E.D. La. June 3, 2022), a case pending before another section of this Court.

At issue in *Torres-Lugo* is a motion for sanctions filed by another B3 plaintiff against BP, alleging that David Dutton, BP's 30(b)(6) witness, "failed to properly respond to questions and seek information necessary to be a corporate representative witness"[9] as to the issue of BP's dermal monitoring and biomonitoring of cleanup workers.

---

[6] *E.g.*, Defendant's Daubert Motion to Exclude the Causation Testimony of Plaintiff's Expert, Dr. Jerald Cook, Milsap v. BP Expl. & Prod. et al, No. 17-4451 (E.D. La June 14, 2022), R. Doc. No. 46.
[7] R. Doc. No. 60-1, at 4.
[8] *Id.* As yet, defendants have filed neither a summary judgment motion nor any motions *in limine* in this case.
[9] *Id.* at 6.

However, the issue of BP's alleged *failure to collect* biomonitoring data does not address the question of whether Cook's report is sufficient to establish general causation. Whether the *Torres-Lugo* court decides that sanctions are warranted and whether these potential sanctions would result in more discovery pertaining to BP's collection of biomonitoring data is irrelevant. Sanctions and more discovery on BP's internal decision-making regarding collecting data have no effect on the data *actually available* to Cook to prove general causation and, as another section of this Court has noted, are therefore not outcome determinative of "the defining legal issue"[10] of general causation. *Peairs v. BP Expl. & Prod.*, No. 17-3596, R. Doc. No. 65, at 2 (E.D. La. July 19, 2022) (Vance, J.); *Coleman v. BP Expl. & Prod.*, No. 17-4158, R. Doc. No. 71, at 2 (E.D. La. June 27, 2022) (Vance, J.).

Moreover, Cook's general causation analysis was not limited to data from BP or derived from the Deepwater Horizon spill; Cook had other data available to him to support his analysis. For example, the Unified Area Command, which was composed of several federal and state agencies, "engaged in extensive and coordinated data collection and environmental monitoring efforts" relating to the Deepwater Horizon spill. *In re Deepwater Horizon Belo Cases*, 2020 WL 6689212, at *4 (N.D. Fla. Nov. 4, 2020), *aff'd sub nom. In re Deepwater Horizon BELO Cases*, 2022 WL 104243 (11th Cir. Jan. 11, 2022). Cook could have sought to support his general causation analysis with data collected as part of these efforts, as well as by "relying on the universe of relevant epidemiology and toxicology literature studying the spill or by relying on the

---

[10] *Id.* at 4.

work of Dr. Jones." *Harrison v. BP Expl. & Prod.*, No. 17-4346, 2022 WL 2390733, at *7 (E.D. La. July 1, 2022) (Morgan, J.). Additionally, as noted by another section of the Court, Cook could also have buttressed his analysis with epidemiological studies of the health effects on responders from prior oil spills, not just from data on the Deepwater Horizon spill. *Grant v. BP Exploration & Production, Inc.*, No. 17-4334 (E.D. La. July 6, 2022) (ECF No. 63) (Vance, J.).

The dispute at issue in the *Torres-Lugo* case has no effect on the data available to Cook, and therefore has no effect on the Court's analysis regarding general causation. As another section of this Court has noted, the issue of BP's failure to collect biomonitoring data is "irrelevant" because "the point of an expert on general causation is to explain whether the exposure to a particular chemical is capable generally of causing a certain health issue in the general population. It is not dependent on data from the particular incident at issue." *Burns v. BP Expl. & Prod.*, No. 17-3117, 2022 WL 2952993, at n. 5 (E.D. La. July 25, 2022) (Ashe, J.).

Considering the above, the Court finds that continuing all scheduling deadlines and submission deadlines is not warranted and that good cause for delay has not been demonstrated. *See* Fed. Rule Civ. P. 16(b)(4). Accordingly,

**IT IS ORDERED** that the plaintiff's motion to continue all scheduling deadlines in this case is **DENIED**.

New Orleans, Louisiana, August 16, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**